# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **LINDA JEAN UTLEY,** | }<br>} |
| **Plaintiff,** | }<br>} |
| v. | } Case No.: 2:11-CV-01430-RDP<br>} |
| **MICHAEL J. ASTRUE,**<br>**COMMISSIONER OF SOCIAL**<br>**SECURITY,** | }<br>}<br>}<br>} |
| **Defendant.** | } |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Linda Jean Utley brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB") under Title II of the Act.  42 U.S.C. § 405(g).  Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

Plaintiff filed an application for a period of disability and DIB on November 16, 2005, in which she alleged that her disability began on February 1, 2005.  (Tr. 90-98).  Plaintiff's application was initially denied on March 23, 2006.  (Tr. 79).  Plaintiff requested and received a hearing before Administrative Law Judge Jerome Munford (the "ALJ") on April 23, 2008.  (Tr. 21, 30).  In his decision, dated October 15, 2008, the ALJ determined that Plaintiff had not been under a disability as defined in the Act at any time from February 1, 2005, her alleged onset date

of disability, through December 31, 2005, the date Plaintiff was last insured.[1] (Tr. 20). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

Plaintiff, a former administrative assistant, alleges onset of disability on February 1, 2005, as a result of depression, memory problems, claustrophobia, musculoskeletal problems, insomnia, headaches, fibromyalgia, nervousness, and side effects from prescribed medications. (Tr. 101). Plaintiff last met the insured status requirements of the Act on December 31, 2005. (Tr. 78). Plaintiff was fifty-eight years old as of the date last insured. (*Id.*).

Plaintiff's medical records describe a variety of ailments. A March 2003 cardiology evaluation completed by Dr. Sherri Clark, a physician at Pulmonary Medicine Associates, P.C., notes that Plaintiff has a history of mitral valve prolapse. (Tr. 240). In March 2005, Dr. Clark diagnosed Plaintiff with fatigue, anxiety and depression; treatment notes mention no complaints of pain. (Tr. 203). In June 2005, when Plaintiff complained of insomnia, Dr. Clark noted that Plaintiff's fatigue, anxiety and depression had resolved. (Tr. 197). In September 2005, Plaintiff was diagnosed with depression and anxiety, as well as osteoporosis. (Tr. 190). A whole body bone scan revealed minimally increased activity in her knees, hips and shoulders consistent with arthritic pain. (Tr. 169).

In October 2005, Dr. Clark diagnosed Plaintiff with acute insomnia, possibly triggered by antidepressants. (Tr. 236-37). In October and November 2005, Plaintiff was treated by a

---

[1] To be eligible for disability insurance benefits, a claimant must show that she became disabled prior to the expiration of her disability insured status. 42 U.S.C. §§ 416(i)(3), 423(a); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Plaintiff's disability insured status expired on December 31, 2005. (Tr. 77). Therefore, Plaintiff had to prove that she was disabled before December 31, 2005.

chiropractor for tension headaches, and in November was diagnosed by Dr. Clark with headaches, leg pain, rib pain, insomnia and depression. (Tr. 160, 182). Dr. Connolly, another doctor who examined Plaintiff at Pulmonary Medicine Associates, P.C., noted on November 23, 2005 that Plaintiff planned to undergo an evaluation for fibromyalgia. (Tr. 251).

On February 13, 2006, over one and a half months after Plaintiff's disability insurance status expired, Plaintiff began treatment with Dr. McLain, a rheumatologist. (Tr. 242). During her initial consultation with Dr. McLain, Plaintiff complained of multiple musculoskeletal pains and sleeping problems. (Tr. 247). Dr. McLain diagnosed Plaintiff with fibromyalgia, irritable bowel syndrome, mitral valve prolapse, status post bilateral shoulder surgery with adhesive capsulitis, degenerative disc disease, osteoarthritis, and possible Sjogren's syndrome. (Tr. 245). In November 2006, Dr. McLain completed an application for disability access parking for Plaintiff in which he reported that Plaintiff needed a disability access parking placard because she had a condition which limited or impaired her ability to walk, and that this disability was long term. (Tr. 368).

On September 20, 2006, Plaintiff was again seen by Dr. Clark who diagnosed Plaintiff with bronchitis, increased cholesterol, fibromyalgia, and controlled depression and anxiety. (Tr. 326). The next month, Plaintiff's bronchitis had resolved, but she reported that she was not sleeping well. (Tr. 328).

In January 2008, Plaintiff was diagnosed with stage one infiltrating mammary carcinoma of the left breast, and underwent a lumpectomy and sentinel node biopsy. (Tr. 403).

Plaintiff testified at the hearing, held on April 23, 2008, that she suffers regularly from fatigue and pain. (Tr. 40-43). At the time of the hearing, Plaintiff was seeing Dr. McLain every three months for her pain. (Tr. 40). She testified that, on a scale from one to ten, her pain never

goes below a level seven. (Tr. 42). Plaintiff further testified that her pain level increased to ten about two or three times each day; that she had difficulty concentrating at least three times each day when she was trying to read or watch television; and that she did not get restful sleep at night. (Tr. 42-43, 45-47). She further testified that she could only sit or stand for about thirty minutes at a time, that bright lights bother her, and that she had psoriasis which caused her feet to crack and bleed. (Tr. 50-52).

On March 21, 2006, a disability examiner performed a residual functional capacity assessment which did not support Plaintiff's claims of severity. (Tr. 313). Additionally, on March 22, 2006, a non-examining state agency psychiatrist found that there was insufficient evidence to determine the severity of Plaintiff's mental impairments through the date last insured. (Tr. 306).

A vocational expert testified at the hearing that Plaintiff's past relevant work as an administrative assistant was performed at the sedentary level of physical exertion, was considered skilled work, and that Plaintiff had acquired skills transferable to other jobs such as payroll clerk, human resources assistant, and data entry clerk. (Tr. 66-67). When asked to consider Plaintiff's age, education, past work experience, and the limitations, the vocational expert testified that Plaintiff could perform her past relevant work. (Tr. 72).

On December 16, 2008, two months after the ALJ's decision and almost three years after Plaintiff's disability insurance expired, Plaintiff submitted to the Appeals Council a letter from Dr. McLain that declared that Plaintiff was "totally disabled from any employment" due to "multiple medical problems and chronic pain." (Tr. 420). The Appeals Council considered Dr. McLain's opinion in its decision denying review and found that it did not provide a basis for challenging the ALJ's opinion. (Tr. 1-2).

**II.     ALJ Decision**

Disability under the Act is determined under a five-step analysis. 20 C.F.R. § 404.1 *et. seq*. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability.

In the second step, the ALJ must determine whether the claimant has a medically determinable impairment, or a combination of medical impairments, that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1521. Absent such impairment, the claimant may not claim disability.

Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). If such criteria are met, the claimant is declared disabled.

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). If the claimant has alleged disabling pain, the ALJ must evaluate the claimant's allegations of pain when determining the claimant's RFC. The proper standard to be applied in this circuit when

evaluating complaints of disabling pain was articulated in *Hand v. Heckler*, 761 F.2d 1545 (11th Cir. 1985), which held that in determining whether the claimant suffers from disabling pain,

> [t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Hand v. Heckler*, 761 F.2d at 1548 (quoting S.Rep. No. 466 at 24); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).  In order to establish disabling pain, a claimant must first meet this threshold requirement.  If an ALJ determines that a claimant does satisfy the *Hand* standard, the ALJ may nonetheless discredit the claimant's pain testimony based on substantial evidence.  *See Foote v. Chater*, 67 F.3d 1553, 1560-61 (11th Cir. 1995); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("After considering a claimant's complaints of pain [under the *Hand* standard], the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence.").  If a claimant testifies as to her subjective complaints of disabling pain and the ALJ decides not to credit such testimony, the ALJ "must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work.  If the claimant is determined to be capable of performing past relevant work, then she is deemed not disabled.  If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step.  In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience.  20 C.F.R. § 404.1520(g).  Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs

in the national economy that the claimant can do given her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1512(g), 404.1560(c).

In the instant case, the ALJ determined that (1) Plaintiff did not engage in substantial gainful activity during the period of the alleged disability; (2) Plaintiff's fibromyalgia, possible Sjogren's syndrome, degenerative disc disease and osteoarthritis constitute "severe" impairments during the relevant time period (Tr. 15); but that (3) Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. 404, Subpart P Appendix 1 (Tr. 16); and that (4) through the date last insured, Plaintiff was able to perform her past relevant work.  (Tr. 18-19).  The ALJ therefore concluded that Plaintiff is not disabled under the Act.  (Tr. 20).

In reaching his RFC determination, the ALJ evaluated Plaintiff's pain testimony using the *Hand* standard and found that, "[a]lthough the documentary record establishes that the claimant had underlying medical conditions capable of producing some pain . . . substantial evidence as a whole does not confirm disabling pain or limitations arising from those conditions."  (Tr. 18).  It is this determination that Plaintiff attacks in this case.

In discrediting Plaintiff's pain testimony, the ALJ relied on his finding that Plaintiff's medical records do not establish symptoms that prevented her from performing her past relevant work through the date last insured. (Tr. 17).  The ALJ noted that, during her 2005 visits with Dr. Clark, Plaintiff did not complain of significant pain or of other limitations related to fibromyalgia or any other impairment.  (*Id.*).  And while there were reports of chest wall pain in February 2005, Plaintiff did not report chest wall pain during her visit the next month.  (*Id.*)  The rib and side pain reported on August 22, 2005, was not reported during Plaintiff's visit just one week later.  (*Id.*).  Plaintiff's whole body bone scan in September 2005 revealed only minimal

arthritic change. (*Id.*). At no time during the period insured did Dr. Clark report that Plaintiff suffered from pain that would have prevented her from performing past relevant work. (*Id.*). The ALJ also addressed Plaintiff's fibromyalgia treatment with Dr. McLain and found that it did not establish disabling pain or other limitations during Plaintiff's alleged disability period. (*Id.*) The ALJ gave no particular weight to the opinions of the non-examining state agency psychiatrist and the disability examiner, whose reports were adverse to Plaintiff. (Tr. 18).

### III.    Plaintiff's Arguments

The only[2] issue raised in this case is whether the ALJ "failed to properly evaluate the credibility of Plaintiff's [pain] testimony" when concluding that Plaintiff retained a RFC commensurate with performing past relevant work. (Pl.'s Mem. at 3). Plaintiff has raised three arguments in support of her position that the ALJ failed[3] to properly evaluate the credibility of her pain testimony: (1) that "the ALJ appears to have focused only on the Plaintiff's date last insured and did not give credit [to] the records prior to the same" (Pl.'s Mem. at 8); (2) that "[t]he ALJ improperly considered the Plaintiff's medical history, specifically the records prior to December 31, 2005" (Plaintiff's date last insured) by not giving controlling weight to Dr. McLain's records from February 2006  (Pl.'s Mem. at 8-9); and (3) that the ALJ erred by failing

---

[2] Plaintiff does mention in her conclusion that the ALJ "failed to fully and fairly develop the record."  (Pl.'s Mem. at 10).  This argument was never raised in the body of Plaintiff's brief nor was it developed.  It is not clear whether Plaintiff intended for this statement to be a separate argument at all.  Therefore, to the extent that this statement can be construed as an argument, it is deemed waived.  *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citations to authorities, are generally deemed to be waived.").

[3] Plaintiff's brief actually says that "[t]he ALJ's reasons for rejecting the Plaintiff's pain testimony are simply supported by substantial evidence." (Pl.'s Mem. at 8).  Giving Plaintiff the full benefit of the doubt, the court assumes that this sentence contains a typo.

to consider evidence from Dr. McLain that Plaintiff never presented at the hearing. (Pl.'s Mem. at 9).

## IV. Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin,* 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005).

## V. Discussion

In her first argument, Plaintiff alleges that "the ALJ appears to have focused only on the Plaintiff's date last insured and did not give credit [to] the records prior to the same," citing the ALJ's finding that:

> [A]lthough the documentary record establishes that the claimant had underlying medical conditions capable of producing some pain and other limitations *through* the date late insured, substantial evidence as a whole does not confirm disabling pain or limitations arising from these conditions, nor does it support a conclusion that

>       the objectively determined medical conditions were of such
>       severity that they could reasonably be expected to give rise to
>       disabling pain and other limitations *through* the date last insured."

(Pl.'s Mem. at 8) (citing Tr. 18) (emphasis added).  Plaintiff misreads the ALJ's use of the word "through" to mean "on."  While there are many definitions of "through," the court is not aware of any such definition in common use that equates that term with "on."  Furthermore, the ALJ specifically addressed the question of whether Plaintiff "had significant restrictions in her ability to perform basic work activities . . . from February 1, 2005, the alleged onset date, *through* December 31, 2005, the date last insured" (Tr. 16) (emphasis added).  This portion of the ALJ's decision demonstrates that the term "through," as used by the ALJ, means "up to and including."  *See* THE AMERICAN HERITAGE COLLEGE DICTIONARY 1436 (4th Ed. 2002).

Plaintiff's second argument appears to be at odds with her first argument. While Plaintiff alleges in her first argument that the ALJ erred by *not* considering the medical record records prior to December 31, 2005, her date last insured, Plaintiff's second argument alleges that the ALJ erred because he "improperly considered the Plaintiff's medical history, specifically the records prior to December 31, 2005." (Pl.'s Mem. at 8).  Putting aside the obvious tension between Plaintiff's first and second arguments, it is not entirely clear how the evidence Plaintiff musters in support of her second argument – *i.e.*, a record from Dr. McLain's office from February 14, 2006 – is a record *prior* to December 31, 2005.  (*See* Pl.'s Mem. at 9).  Furthermore, Plaintiff fails to establish how records describing her condition *after* her alleged period of disability would have been relevant to the ALJ's assessment of Plaintiff's credibility concerning her condition *during* her alleged period of disability.  Therefore, for a number of reasons, this argument is simply off the mark.

Finally, Plaintiff submits that "[r]ecords submitted to the Appeals Council further lend credence to the severity of the limitations alleged by the Plaintiff," referring to Dr. McLain's letter, dated December 16, 2008. (Pl.'s Mem. at 9). The letter at issue, however, was written on December 16, 2008, two months after the October 15, 2008 hearing. (Tr. 420). In making this argument, Plaintiff essentially asserts that the ALJ erred by failing to take into consideration evidence that Plaintiff never presented to the ALJ – indeed, evidence that the ALJ could not consider because it had not yet come into existence.

In determining whether the ALJ's decision is supported by substantial evidence, the court will only consider the evidence actually presented to the ALJ. *See Wright v. Barnhart*, 153 Fed. Appx. 678, 684 (11th Cir. 2005) ("We have held that 'when the [Appeals Council] has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence.'") (citing *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998)). Because the ALJ was never actually presented with the evidence now introduced by Plaintiff, the court cannot consider this evidence in reviewing the ALJ's decision because the ALJ was never given an opportunity to consider it. This argument, therefore, is without merit.

Even if the court were to ignore the obvious breakdowns in Plaintiff's logic, it is not clear how any of Plaintiff's allegations actually demonstrates error by the ALJ. Plaintiff's strategy reveals itself in her statement that the "[r]ecords submitted to the Appeals Council further lend credence to the severity of the limitations alleged by the Plaintiff." (Pl.'s Mem. at 9). Plaintiff appears to be asking the court to reweigh the evidence in "evaluating the substance of the

action."[4]  Plaintiff misconstrues the role of this court.  This court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The court's review of the ALJ's decision is limited to whether his decision is supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d at 1221.

After careful review, the court finds that substantial evidence supports the ALJ's decision not to credit Plaintiff's pain testimony.  In reaching his decision, the ALJ noted that "[Plaintiff's] medical records do not establish that her symptoms prevented her from performing her past relevant work through the date last insured." (Tr. 17).  This finding is supported by the record. (Tr. 151-61, 163-70, 175, 177-217, 220-41, 251-94).  The ALJ took into account Dr. Clark's records through the date last insured that showed that Plaintiff had not complained of significant pain or limitations related to fibromyalgia or any other impairment. (Tr. 17).  This finding is supported by the record. (Tr. 177-217).  The ALJ noted that, although Plaintiff complained of fatigue, anxiety, and depression in February 2005, these conditions had been controlled through medication by June 2005. (Tr. 17).  This finding is supported by the record. (Tr. 236).  The ALJ noted that Plaintiff's whole body bone scan in September 2005 showed minimal arthritic changes in her knees, hips, and shoulders. (Tr. 17).  This finding is supported by the record. (Tr. 154). Plaintiff's venous Doppler study also returned normal results. (Tr. 170). Plaintiff's echocardiogram in December 2005 also revealed no abnormalities. (Tr. 164).

---

[4] Plaintiff appears to believe that "[t]he district court reviews the Commissioner's legal decision de nova [*sic*] in evaluating the substance of the action." (Pl.'s Mem. at 2).  The court does review legal issues *de novo*.  *Moore v. Barnhart,* 405 F. 3d at 1211 (11th Cir. 2005). However, substantive determinations are reserved for the Commissioner and the court only reviews the Commissioner's substantive determinations to see if they are supported by substantial evidence. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d at 1221 (11th Cir. 2002).

Plaintiff was diagnosed with fibromyalgia in February 2006, but medical records do not indicate that she was experiencing disabling pain or limitations at that time. (Tr. 245). While the rheumatologist did report that Plaintiff needed a disability access parking placard in November 2006, this came almost a year after the date last insured and only concerned Plaintiff's limited ability to walk. (Tr. 368). As the ALJ correctly stated, a limited ability to walk is not inconsistent with the finding that Plaintiff could perform her past relevant work. (Tr. 17). Finally, the ALJ noted that no treating or examining physician had reported that Plaintiff's physical or mental impairments would cause her to be unable to perform her past relevant work, her depression and anxiety were controlled with medication, and she suffered no significant side effects from her medication that were not addressed through medication changes. (Tr. 17-18). As a whole, the record supports the ALJ's determination not to credit Plaintiff's pain testimony. Therefore, the court finds the ALJ's decision is supported by substantial evidence.

## V.     Conclusion

The court concludes that the ALJ's determination that Plaintiff was not disabled during the period insured is supported by substantial evidence, and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this   26th   day of September, 2012.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE